**Fred KING and Deborah King, Appellants–Defendants,**

v.

**Roy WILEY and Terrecia M. Wiley, Appellees–Plaintiffs,**

**Leslie Robert HARDEN, Appellee– Third Party Plaintiff.**

No. 43A03–0204–CV–102.

Court of Appeals of Indiana.

March 31, 2003.

Fred D. King, Kokomo, IN, Appellant Pro Se.

Stephen R. Snyder, Randall L. Morgan, Snyder, Birch, Cornwell & Morgan, Syracuse, IN, Attorneys for Appellees Roy and Terrecia Wiley.

## OPINION

BAILEY, Judge.

### Case Summary

Fred and Deborah King (the Kings) appeal from an order quieting title to real estate in favor of Roy Wiley and Terrecia M. Wiley (the Wileys) and Leslie Robert Harden (Harden) on the basis of adverse possession. We reverse and remand.

### Issues

The Kings raise three issues for our review, which we consolidate and restate as:

I. Whether the "legal survey" performed under Indiana Code section 36–2–12–10(b) establishes the boundaries of the Kings' easement as a matter of law; and

II. Whether the trial court erroneously quieted title to property on the basis of adverse possession.[1]

### Facts and Procedural History

In 1982, the Kings purchased a tract of land and a twenty-foot easement for ingress and egress to the otherwise landlocked parcel from Raymond and Oweeda Forrest. The Forrests retained ownership of other land nearby. The warranty deed, recorded on August 8, 1983, describes the parcel as follows:

A tract of land in the Northwest Quarter of the Northwest Quarter of Section 13, Township 32 North, Range 6 East, in Kosciusko County, Indiana, better described as follows:

Commencing at the Northwest Corner of said Section 13 and running thence East, along the North section line (said line being the centerline of Old Road # 30), 505.0 feet; thence South, 230.0 feet to a Point of Beginning; thence further South, 32.5 feet; thence West. 65.5 feet; thence South 5 degrees 46 minutes East, 139.5 feet; thence South 86 degrees 43 minutes East, 186.8 feet; thence North, 182.0 feet; thence West, 135.0 feet to the Point of Beginning; and containing 0.7402 acres[.]

---

1. The Kings also claim the trial court erred by failing to grant them an implied easement of necessity over the Harden tract. In light of our disposition of other issues, it is unnecessary to consider that question.

*Also, an easement for ingress and egress to and from said real estate, over a strip of land 20 feet wide, lying along the East boundry [sic] of the above described tract, and extending North to the right-of-way of Old Road 30, a county road.*

(Exh. 3, emphasis supplied).

Since 1977, Harden owned acreage abutting the King tract to the north. The Wiley tract lies east of the Harden tract, but it does not touch the King tract. The purported easement implicates the east boundary of the Harden tract and the west boundary of the Wiley tract.

Initially, the Kings did not use their easement, but sometime in 1996, Fred King told the Wileys and Harden of his intention to build a driveway there. To locate the deeded easement, the Kings hired Kosciusko County Surveyor Richard J. Kemper to perform a "legal survey" pursuant to Indiana Code section 36–2–12–10(b). Kemper issued notices of the survey to each of the Wileys and to Harden.[2] No notice was sent to the Forrests.[3] After studying recorded deeds and inspecting the area, Kemper prepared a survey outlining a strip of land lying between the Harden and Wiley tracts extending from the King tract to Old Road 30. *See* appended survey. Ownership of that strip of land is at issue in this case.

Kemper's survey showed that a well pit, which supplied water to a mobile home on the Wiley tract, extended 2.5 feet onto the property. A foot of the mobile home hitch rested on the disputed tract, which also held a utility pole with a fuse box and meters servicing the Wileys' property. Kemper entered the survey into the Kosciusko County Legal Survey Book.

The Wileys initiated an appeal of the legal survey along with a complaint requesting a declaration regarding "the exact location of the lines and boundaries of the ingress and egress easement[.]" (App.96.) The Kings counterclaimed, requesting that title to the real estate be quieted in their names. In his separate appeal of the legal survey and quiet title action, Harden argued that Kemper was "without jurisdiction" to perform a legal survey under the relevant statute; that the legal survey improperly interpreted the easement's location; and that any easement was extinguished based on adverse possession. (App.106–09.)

At the ensuing evidentiary hearing, Kemper noted that the King deed referenced 505 feet and the Harden deed referenced 135 feet, leaving 20 feet at the end of those descriptions in a perfect 660 by 660 foot square. He "assume[d] that the intent was for a 20 foot easement to lie ... along the east side of the King tract running to Old Road 30." (Tr. 45.) The monuments, however, show a smaller "gap ranging from 10.78 to 12 feet in width" located between the Harden tract and the historic western boundary of the Wiley tract. (Tr. 44.) Kemper further testified that, in 1980, the deeds in the Wileys' chain of title changed the legal description of the Wiley tract's western boundary, effectively moving the boundary and deeding footage the prior owner did not own. Thus, from 1980, the purported easement, as well as the servient estate, fell within the legal description of the Wiley tract. Kemper theorized that someone had observed the monuments on the eastern portion of the Harden tract and thought that

---

**2.** Notice was also sent to Fred and Deborah King and to Gary and Heidi Leininger. The record does not disclose why the Leiningers received notice of the survey.

**3.** In 1991, Raymond Forrest and Oweeda Forrest transferred ownership of their nearby tract to Raymond Forrest by quitclaim deed.

the line was also the western boundary of the Wiley tract.

Following the hearing, the trial court entered findings of fact, conclusions thereon, and its judgment quieting title to the disputed property in the Wileys and Harden. The court determined that, although the Kemper survey contained accurate measurements, Kemper had no jurisdiction to perform the legal survey because the Kings were not landowners of adjacent property. Thus, the court declared the survey void. The court further determined that the Wileys and Harden had adversely possessed any interest that the Kings claimed in the easement. Without addressing ownership of the servient estate, the court concluded that title to the Wiley tract "should be quieted in Wiley to a point coexistent with the East line of the Harden tract" as shown in Kemper's survey. (App.12.) The Kings filed a motion to correct error, which was denied. This appeal followed.[4]

### Discussion and Decision

#### I. Legal Survey

■ The Kings contend that the trial court erred when it declared the legal survey void, and they insist that Kemper's survey is determinative of their easement boundaries. Indiana Code section 36–2–12–10(b) provides:

A landowner desiring to establish the location of the line between the landowner's land and that of an adjoining landowner by means of a legal survey may do so as follows:

(1) The landowner shall procure a land surveyor registered under IC 25–21.5 to locate the line in question and shall compensate that surveyor.

(2) The land surveyor shall notify the owners of adjoining lands that the land surveyor is going to make the survey. The notice must be given

by registered or certified mail at least twenty (20) days before the survey is started.

(3) If all the owners of the adjoining lands consent in writing, the notice is not necessary.

(4) The lines and corners shall be properly marked, monumented by durable material with letters and figures establishing such lines and corners, referenced, and tied to corners shown in the corner record book in the office of the county surveyor or to corners shown on a plat recorded in the plat books in the office of the county recorder.

(5) The land surveyor shall present to the county surveyor for entry in the legal survey record book a plat of the legal survey and proof of notice to or waiver of notice by the adjoining landowners. The land surveyor shall give notice to adjoining landowners by registered or certified mail within ten (10) days after filing of the survey.

Ind.Code § 36–2–12–10(b); *Leons v. Bloemker*, 649 N.E.2d 1041, 1043 (Ind.Ct. App.1995). "The lines located and established under subsection (b) are binding on all landowners affected and their heirs and assigns, unless an appeal is taken under section 14" of the chapter. Ind.Code § 36–2–12–10(c); *but see Criss v. Johnson*, 169 Ind.App. 306, 348 N.E.2d 63, 67 (1976) (considering former statute and citing cases for the proposition that "even an undeniably correct survey could not establish or defeat title").

#### A. Standard of Review

■ We first consider whether the Kings are "landowners" as contemplated by the statute. Resolving that issue re-

---

4. Harden did not file a brief in this appeal.

quires interpretation of Indiana Code section 36–2–12–10(b), a question of law reserved for the courts. *See Spears v. Brennan,* 745 N.E.2d 862, 869 (Ind.Ct. App.2001), *reh'g denied.* Appellate courts review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *State Auto Ins. Companies v. Shannon,* 769 N.E.2d 228, 231 (Ind.Ct.App.2002), *trans. denied.* When construing a statute, we seek to ascertain and give effect to the legislature's intent. *Koppin v. Strode,* 761 N.E.2d 455, 461 (Ind.Ct.App.2002), *trans. denied.* We examine and interpret the statute as a whole and refrain from over-emphasizing a strict literal reading of individual words. *Id.*

### B.   Analysis

■ The Wileys argued before the trial court that Kemper had no authority to perform the legal survey because, at most, the Kings hold only an easement over the disputed parcel. The Wileys suggested that the "landowner" for purposes of the statute is Raymond Forrest, so that only he could request a legal survey of the boundaries lines.

■ "[W]e presume that our legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals." *Ind. Office of Envtl. Adjudication v. Kunz,* 714 N.E.2d 1190, 1193 (Ind.Ct.App.1999). An easement is merely the right to use the land of another. *Naderman v. Smith,* 512 N.E.2d 425, 431 (Ind.Ct.App.1987). However, Indiana Code section 36–2–12–10(b) does not limit "landowner" to one holding fee simple title. Rather, the statute uses the term generally.

A "landowner" is simply "[o]ne who owns land." BLACK'S LAW DICTIONARY 883 (7th ed.1999). "Own" means "[t]o have or possess as property; to have legal title to." *Id.* at 1130. Here, the Kings received legal title to a tract of land in fee simple and legal title to an easement serving that tract. That easement purportedly lies between the Wiley and Harden tracts. As such, the Kings were landowners desiring to establish the location of a line between their land and that of adjoining landowners. Accordingly, they were entitled to proceed under Indiana Code section 36–2–12–10(b).

■ Nevertheless, notice is a pre-requisite to establish property lines through the legal survey statute. *Leons,* 649 N.E.2d at 1043. The statute must be strictly followed, and the burden is upon the party seeking the benefit of the statute to give notice to all persons who possess an interest in the real estate. *Id.* The Forrests conveyed only an easement to the Kings. The Wileys argued that Raymond Forrest owned the land underlying the easement.

The record does not establish ownership of that interest as a matter of law. Indeed, the Auditor of Kosciusko County testified that the strip of land carries no key number and no indication of ownership. However, it appears that the Forrests or their successors-in-interest did not transfer their entire interest in the disputed property to the Kings. Thus, they were entitled to notice of the legal survey. *See* I.C. § 36–2–12–10(b)(2), (b)(5). In light of this deficiency as well as factual issues related to ownership of the easement, we decline the Kings' request to use Kemper's survey to determine the easement boundaries as a matter of law.

### II.   Adverse Possession

■ The Kings also challenge the trial court's conclusion that their easement was extinguished by adverse possession. Record title is the highest evidence of ownership, not easily defeated. *Williams v. Rogier,* 611 N.E.2d 189, 193 (Ind.Ct. App.1993). Nevertheless, record title, in-

cluding title to an easement, may be defeated by adverse possession. *Panhandle E. Pipe Line Co. v. Tishner,* 699 N.E.2d 731, 736 (Ind.Ct.App.1998). The general rule is that, to establish adverse possession, claimants must prove that their possession was actual, visible, open and notorious, exclusive, under claim of ownership, hostile, and continuous for the statutory period. *Id.* The statutory period necessary to achieve adverse possession is ten years. *Ballard v. Harman,* 737 N.E.2d 411, 416 (Ind.Ct.App.2000) (citing Indiana Code section 34–11–2–11).[5] Each of the elements of adverse possession "must be strictly proved by evidence that is clear, positive, and unequivocal."

## A. Standard of Review

▬▬▬▬ Because the trial court made special findings of fact and conclusions of law, we first determine whether the evidence supports the findings; we then determine whether the findings support the judgment. *Davis v. Sponhauer,* 574 N.E.2d 292, 296 (Ind.Ct.App.1991). The judgment of the trial court will be affirmed if we conclude that the findings support the judgment and are not clearly erroneous. *Id.* Special findings are clearly erroneous if the record contains no facts or inferences supporting them. *Id.* A judgment is clearly erroneous where our review of the record leaves us with a firm conviction that a mistake has been made, such as where the evidence is without conflict and points unerringly to a different conclusion. *Id.* Our scope of review allows us to determine whether the law was correctly applied to the facts. *Laws v. Lee,* 471 N.E.2d 1229, 1232 (Ind.Ct.App.1984).

## B. Analysis

Here, the trial court concluded, "The possessions of Harden and Wiley and the predecessors of Wiley existed for more than ten years prior to the filing of this complaint." (App.12.) In particular, the Wileys' well pit extended 2.5 feet onto the easement and, in another location, a foot of their mobile home hitch encroached upon the easement. A utility pole with meters was also located on the property. The trial court determined the possession sufficient to extinguish the Kings' easement by means of adverse possession.

▬▬▬▬ Adverse possession claims are necessarily decided on a case-by-case basis, for what constitutes possession of one type of property may not constitute possession of another. *McCarty v. Sheets,* 423 N.E.2d 297, 300 (Ind.1981). The Kings' interest litigated in this action is an easement. An easement created by grant is not typically lost by mere nonuse. *Jeffers v. Toschlog,* 178 Ind.App. 603, 383 N.E.2d 457, 459 (1978). Generally, where an easement is created by express written contract, lapse of time and occupation will not extinguish it unless there is "an absolute denial of the right to the easement, and the occupation was so adverse and hostile that the owner of the easement could have maintained an action for obstructing his enjoyment of it." *Seymour Water Co. v. Lebline,* 195 Ind. 481, 144 N.E. 30, 33 (1924) (superseded by statute for railroad abandonment of right-of-way).

Here, the encroachments, mainly related to utilities, cover only a small part of the

---

5. To prove adverse possession, the adverse claimant must also pay all taxes and special assessments falling due on the real estate during the period that adverse possession is claimed. *Williams,* 611 N.E.2d at 193 (citing Indiana Code section 32–1–20–1, now codified at Indiana Code section 32–21–7–1). Our courts have recognized an exception to this statutory requirement where the disputed real estate lies adjacent and contiguous to other property owned by the claimant and taxes have been paid according to the tax duplicate. *Id.*

easement. The remaining area remains unencumbered. Indeed, the Kings eventually used the easement for walking. Under these facts, the Wileys' possession of the easement was not "so notorious" as to alert the Kings that adverse claimants were asserting exclusive dominion over the entire easement. *See McCarty*, 423 N.E.2d at 301 (citation omitted).

■ Another problem arises. When the trial court quieted title to the property in the Wileys, the court not only extinguished the Kings' interest in the easement, it extinguished any interest the Forrests held in the land. However, the Forrests were not parties to the quiet title action.

■ The Fourteenth Amendment prohibits any State from depriving a person of property without due process of law. U.S. CONST. amend. XIV; *Howard v. Incorporated Town of North Judson*, 661 N.E.2d 549, 553 (Ind.1996). "Constitutionally protected property means 'a legitimate claim of entitlement.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct.

2701, 33 L.Ed.2d 548 (1972)). An essential principle of due process is that a deprivation of property must be preceded by notice and opportunity for hearing appropriate to the nature of the case. *Id.* (citations omitted). The opportunity to be heard applies to third parties who are needed to adjudicate an issue and whose rights might be adversely affected by such adjudication. *Anderson Fed. Sav. and Loan Ass'n v. Guardianship of Davidson*, 173 Ind.App. 549, 364 N.E.2d 781, 785 (1977) (citing *Bittinger v. Bell*, 65 Ind. 445 (1879)).

The court's findings are silent regarding ownership of the land underlying the easement during the time of alleged adverse possession. The evidence suggests, however, that the Forrests or their successors-in-interest had a legitimate claim of entitlement in the disputed parcel. That interest cannot be extinguished without notice and an opportunity to be heard. For the above reasons, we reverse the judgment, and we remand for proceedings consistent with this opinion.

Reversed and remanded.

ROBB and BARNES, JJ., concur.

**SURVEY PREPARED FOR: FRED KING**
ORIGINAL SURVEY DATED: 12/28/1999
DATE OF LEGAL SURVEY: 5/17/2000
ENTERED IN KOSCIUSKO COUNTY LEGAL SURVEY BOOK #4 PAGE #73: 7/5/2000
-See attached sheet for scope of project & Surveyor's Report narrative-

PLAINTIFF'S EXHIBIT

CERTIFICATION

I, THE UNDERSIGNED REGISTERED LAND SURVEYOR LICENSED IN COMPLIANCE WITH THE LAWS OF THE STATE OF INDIANA, HEREBY CERTIFY THAT THE ABOVE DESCRIBED TRACT OF LAND WAS SURVEYED BY ME FOLLOWING GENERALLY ACCEPTED STANDARDS AND THAT THE ABOVE IS A CORRECT REPRESENTATION THEREOF.

| PREPARED FOR: FRED KING | | |
| --- | --- | --- |
| PROJECT #99-065 | SCALE 1"=50' | Legal Survey |
| DR BY MK | | 5/17/2000 |

RICHARD J. KEMPER
REG. LAND SURVEYOR LIC. #880012

RICHARD J. KEMPER
REGISTERED
No. 880012
STATE OF INDIANA
LAND SURVEYOR

king-fred.dwg          PAGE 1 OF 2