## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 16 2015, 6:13 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANTS | ATTORNEY FOR APPELLEE |
|---|---|
| Ryan C. Munden | Jason R. Ramsland |
| Reiling Teder & Schrier, LLC | Ball Eggleston, PC |
| Lafayette, Indiana | Lafayette, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Harry J. Evans, et al., | April 16, 2015 |
| *Appellants,* | Court of Appeals Case No. 79A02-1409-PL-627 |
| v. | Appeal from the Tippecanoe Superior Court. The Honorable Thomas H. Busch, Judge. |
| Tommy L. Short, | Cause No. 79D02-1305-PL-20 |
| *Appellee* | |

**Baker, Judge.**

Harry Evans, Barbara Evans, and Clairana Kallner (collectively, the appellants) appeal the trial court's judgment finding that Tommy Short had acquired certain property by adverse possession and that Harry Evans had trespassed onto that property.[1] Finding no error, we affirm.

## Facts

The Evanses own certain property on 750 East in Lafayette. This property abuts Short's property; the south border of the Evanses' property touches the north border of Short's property. Kallner also owns property on 750 East in Lafayette. Pursuant to deeds for the three properties, Short and Kallner are entitled to an easement allowing ingress and egress from the public highway (the Easement). The Easement contains a gravel road to allow for such ingress and egress.

This appeal involves a section of land north of the south line of the Evanses' property and abutting the southern end of the gravel road. Short's father acquired the Short property in 1957, and built a house and driveways, which abut the gravel road, on the property. When Short inherited the property in 2002, he believed that the boundary of his property was the southern border of

---

[1] Appellants argue that, if the trial court incorrectly determined that Short had acquired title by adverse possession, there is insufficient evidence to determine that Harry Evans committed trespass. As we find that the trial court did not err in determining that Short had acquired title to the property, we need not address this argument.

the gravel lane. Therefore, he placed poles and rocks on the southern border to keep others from driving onto it.

[4] On May 24, 2013, the appellants filed suit seeking a declaratory judgment concerning the location of the easement, alleging trespass for Short's encroachment onto the easement, and seeking injunctive relief to enjoin Short from blocking or obstructing the easement. On June 20, 2013, Short filed his answer and counterclaim, alleging that he had acquired title by adverse possession and alleging trespass against Harry Evans. On October 1, 2013, the appellants filed a motion for partial summary judgment regarding their request for a declaratory judgment and Short's adverse possession claim. The trial court denied the motion on December 13, 2013.

[5] On June 12, 2014, the trial court held an evidentiary hearing on the matter. It entered findings of fact and conclusions of law on August 12, 2014. The findings of fact pertinent to this decision are as follows:

> 9. Short inherited the Short Property from his parents in 2002.
>
> 10. Short has lived at the Short property without interruption since 2002.
>
> 11. Short's father acquired the Short Property from Short's grandparents in approximately 1957.
>
> 12. [The] Evans acquired their property in late 1968.
>
> * * *
>
> 13. Short's father erected a house on the Short property in approximately 1957.
>
> 14. Short's two driveways were installed on the property at approximately the same time that the house was built.

15. Short lived at the property from approximately the time of his birth in 1959 until he moved out as a young man

16. After Short moved out of the home on the property, he remained familiar with it because of frequent visits to his parents.

* * *

20. At the time they acquired their property [the] Evans did not know where their property bordered Short's.

21. At or near the southern edge of the Evans property is a gravel lane.

22. The gravel lane served the Short Property and the properties of Short's two neighbors to the west.

23. When [the] Evans purchased the Evans Property in 1968, they did not measure the distance between the recorded property line and the gravel lane.

24. [The] Evans do not know where the gravel lane was relative to the property line in 1968.

25. The improvements on the Short property, including the home, garage, and driveways, were all in place prior to [the] Evans taking title to their property.

26. Short reliably testified that the gravel lane has remained in the same place for a period exceeding fifty (50) years.

* * *

30. Short reliably testifies that he and his father exhibited the following indications of ownership over the area bounded by the surveyed property border, the gravel driveway, the western edge of Short's westernmost driveway and County Road 750 East (the "Limited Disputed Area"):

(d) placement of obstacles, including rocks, posts, and cement blocks in the Limited Disputed Area designed and intended to prevent others from entering thereupon;

(e) repeatedly demanding that others refrain from driving their vehicles upon the Limited Disputed Area unnecessarily;

(f) installation of driveways in the Limited Disputed Area;

(g) parking in the Limited Disputed Area;

(h) removing loose gravel from the Limited Disputed Area and re-depositing it upon the gravel lane;

(i) summoning law enforcement when trespassers entered upon the Limited Disputed Area;

(k) consistently claiming ownership over the Limited Disputed Area.

* * *

35. Short reliably testified that he believed he was paying property taxes on the entire disputed area when he paid the property taxes for the Short property.

36. Short has always held out that the Limited Disputed Area belongs to him, and belonged to his father before him.

37. Short believed that the Limited Disputed Area is rightly part of the Short property.

38. Short's belief that the Limited Disputed Area is rightly part of the Short property was reasonable.

Appellants' App. p. 5-8.

[6] The trial court also concluded that Short had exercised control consistent with ownership over the Limited Disputed Area, that such control was inconsistent with the appellants' deeds, and that such control and "intentional exercise of dominion" was open and not hidden. *Id.* at 9. Based on these findings, the trial court concluded that Short had established that he had complied with the adverse possession tax statute and that he has controlled the Limited Disputed Area for a period exceeding ten years. Finally, the trial court found that Short had acquired title to the Limited Disputed Area by adverse possession, and that, therefore, Harry Evans had trespassed on Short's land when he drove his

car onto the Limited Disputed Area and caused damage.  Appellants now appeal.

## Discussion and Decision

The appellants argue that the trial court erred in determining that Short had acquired title to the limited disputed property by adverse possession.  When reviewing claims tried without a jury, this Court will not set aside the findings and judgment unless clearly erroneous, and due regard will be given to the trial court's ability to judge the credibility of the witnesses.  Ind. Trial Rule 52(A).  A judgment will only be deemed clearly erroneous if there "is no evidence supporting the findings or the findings fail to support the judgment."  *Chidester v. City of Hobart*, 631 N.E.2d 908, 910 (Ind. 1994).  "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made."  *Yanoff v. Muncy*, 688 N.E.2d 1259, 1262 (Ind. 1997).

In Indiana, the doctrine of adverse possession entitles a person without title to obtain ownership of a piece of land upon proof of control, intent, notice, and duration.  *Fraley v. Minger*, 829 N.E.2d 476, 486 (Ind. 2005).  The adverse possessor must also pay all taxes that he reasonably believes in good faith to be due on the property during the period he claims to have adversely possessed the property.  Ind. Code § 32-21-7-1.  The burden is on the claimant to establish all the elements of a claim of adverse possession by clear and convincing evidence.  *Fraley*, 829 N.E.2d at 483.

[9] In addition, we note that adverse possession claims are necessarily decided on a case-by-case basis, for what constitutes possession of one type of property may not constitute possession of another. *McCarty v. Sheets*, 423 N.E.2d 297, 300 (Ind.1981). In this case, while the Evanses' litigated interest is in a portion of their property, Kallner's litigated interest is an easement. An easement created by grant is not typically lost by mere nonuse. *Jeffers v. Toschlog*, 178 Ind. App. 603, 383 N.E.2d 457, 459 (1978). Generally, where an easement is created by express written contract, lapse of time and occupation will not extinguish it unless there is "an absolute denial of the right to the easement, and the occupation was so adverse and hostile that the owner of the easement could have maintained an action for obstructing his enjoyment of it." *Seymour Water Co. v. Lebline*, 195 Ind. 481, 144 N.E. 30, 33 (1924).

[10] Appellants argue that the trial court's determination that Short had acquired title to the Limited Disputed Area by adverse possession is not supported by sufficient evidence. They argue that 1) they were not absolutely denied use of the easement within the Limited Disputed Area, 2) explicit and outward showings of Short's claim to the Limited Disputed Area did not appear until 2008, and 3) there was insufficient evidence to show that Short had a reasonable, good faith belief that he was paying taxes on the Limited Disputed Area. We will address each of these contentions in turn.

[11] The appellants first argue that the trial court incorrectly determined that "Short and his predecessor in title absolutely denied use of the easement within the Limited Disputed Area." Appellants' App p. 17. In support of this argument,

they point out that the trial court found that Harry Evans drove into the Limited Disputed Area and that Short called law enforcement regarding people entering the Limited Disputed Area without his permission. *Id.*; Tr. p. 31, 62. They argue that "a reasonable trier of fact could not conclude that if a party has committed a trespass upon certain property, repeatedly driven across said property, and had law enforcement called for accessing said property, that he/she has been 'absolutely denied use' of the property." Appellant's Br. p. 18.

[12] While it is true that "generally, where an easement is created by express written contract, lapse of time and occupation will not extinguish it unless there is an absolute denial of the right to the easement," here, the trial court could reasonably find that Short did deny the Appellants such use. *King v. Wiley*, 785 N.E.2d 1102, 1109 (Ind. Ct. App. 2003) (internal quotations removed). Short put up rocks and posts to deny access to the Limited Disputed Area and requested that no one access the Limited Disputed Area. Further, the fact that Short called law enforcement to keep trespassers off the property is evidence that he did absolutely deny access to the Limited Disputed Area. The fact that the appellants choose not to heed this denial does not mean that it was not, in fact, a denial.

[13] Next, the appellants argue that explicit and outward showings of Short's claim to the Limited Disputed Area did not appear until 2008. They argue that Short failed to do more than maintain the gravel path, and that maintenance is not sufficient to constitute evidence of dominion over land. Appellants also argue

that the evidence at trial did not establish that the rocks and/or posts had been placed in the Limited Disputed Area for the statutory time period.

[14] This is, however, a misstatement of the evidence. The clearest and most permanent outward showing of Short's, and his predecessors, claim to the Limited Disputed Area are the driveways that were installed on the Limited Disputed Area before the Evanses even took title to their property in 1968. Appellants' App. p. 5. Appellant Kallner admitted that these driveways, as well as Short's action of parking on the driveways, made it difficult to access the Limited Disputed Area. The installation of the driveways and the placing of obstacles around the Limited Disputed Area by Short, and his predecessor, establish that Short and his father openly held out that the Limited Disputed Area was a part of their property.

[15] Appellants also argue that there was insufficient evidence to allow the trial court to find that Short had a reasonable, good faith belief that he was paying the property taxes on the Limited Disputed Area. Pursuant to Indiana Code section 31-21-7-1:

> [P]ossession of the real property is not adverse to the owner in a manner as to establish title to the real property unless the adverse possessor pays all taxes and special assessments that the adverse possessor reasonably believes in good faith to be due on the real property during the period the adverse possessor claims to have adversely possessed the real property.

However, substantial compliance may satisfy the requirement of the adverse possession tax statute in boundary disputes where the adverse possession claimant has a reasonable and good faith belief that the claimant is paying the

taxes on disputed parcel during the period of adverse possession. *Fraley*, 829 N.E.2d at 492.

[16] Appellants cite *Fraley* in support of their argument that a reasonable finder of fact could not have found that Short had a reasonable, good faith belief that he was paying taxes on the Limited Disputed Area. In *Fraley,* our Supreme Court determined that the trial court made "no finding that during the period of adverse possession the Mingers 'paid and discharged all taxes and special assessments of every nature falling due on such land' as required by the adverse possession tax statute, nor is there a finding of substantial compliance." *Id.* at 493.

[17] The instant case is distinguishable from *Fraley*. Here, Short testified that he believed that he owned the Limited Disputed Area and that he believed that he had been paying taxes on the property. Tr. p. 74. Unlike the trial court in *Fraley*, here, the trial court took note of that testimony and specifically found that "Short reasonably believed he was paying property taxes on the entire disputed area when he paid property taxes for the Short property." Appellants' App. p. 12. In addition, the area in question is an eight-foot strip that extends from the northern border of Short's property to the gravel lane. Without looking at a survey of the property, one would likely assume that the Limited Disputed Area is the curtilage to the Short residence. Thus, it is reasonable that Short might believe that he owned the Limited Disputed Area, and, therefore, reasonable that he believed he was paying taxes on the Limited Disputed Area.

Finally, Appellants argue that the trial court erred in finding that Short acquired ownership of the Limited Disputed Area by acquiescence.[2] Appellants maintain that the doctrine of acquiesce is arcane and should not be applied to easements. However, we need not address this argument today. As Appellants concede, "the trial court did not make any conclusions of law based on the theory of acquiescence." Appellants' Br. p. 19. Further, acquiescence only applies when adverse possession does not. *Garrett*, 998 N.E.2d at 304. As the trial court found explicitly that Short had taken title to the Limited Disputed Area by adverse possession, it did not find that Short has acquired title by acquiescence. Appellants' App. p. 12.

The judgment of the trial court is affirmed.

Najam, J., and Friedlander, J., concur.

---

[2] The doctrine of acquiescence applies only when:

> two adjoining property owners (1) share a good-faith belief concerning the location of the common boundary line that separates their properties and, (2) although the agreed-upon location is not in fact the actual boundary, (3) use their properties as if that boundary was the actual boundary (4) for a period of at least twenty years. It is the original agreement between the adjoining owners that takes this and all other "acquiescence" cases out of the realm of adverse possession.

*Garett v. Spear*, 998 N.E.2d 297, 304 (Ind. Ct. App. 2004).