HERBST ET AL. *v.* SMITH.

No. 7281.

SURVEY AND SURVEYOR —*Boundary Lines.—Evidence of.—Statute Construed.*—
   A survey made in accordance with the act of June 17th, 1852, 1 R. S. 1876, p.
   864, is conclusive evidence in favor of the corners and lines established
   thereby, unless appealed from as provided therein, and *prima facie* evidence
   thereof during the time within which an appeal may be taken therefrom.
ESTOPPEL —*Insufficiency of Evidence to Create.*—See evidence set out in the
   opinion.

From the Clark Circuit Court.

*J. H. Stotsenburg,* for appellants.

WORDEN, J.—This was an action by Lucy Herbst,
Charles Herbst and John Herbst, against the appellee, to
recover a piece of land described as a strip of land six
poles in width off the south side of the north-east
quarter of the south-west quarter of section 16, town-
ship one (1) south, of range six (6) east, in Clark county,
Indiana, containing two and ⅞ acres.

Trial by the court; finding and judgment for the de-
fendant. New trial refused.

John Herbst, the elder, died seized of the quarter quar-
ter section above described, leaving his widow, Lucy
Herbst, and John Herbst and Charles Herbst, his chil-
dren, and two other children, who have since conveyed
their interest in the land to Charles Herbst.

The defendant is the owner of the south-east quar-
ter of the south-west quarter of the same section,
which, as will be seen, lies immediately south of, and
adjoining, that owned by the plaintiffs; and the con-
troversy is as to the boundary line between the two
tracts, the plaintiffs claiming that the true boundary
gives them the strip of land in dispute, and the defend-
ant that the true boundary gives it to him.

It was proved on the trial, that, in the year 1853, one

Daniel H. McDaniel, the then surveyor of Clark county, at the request of one of the owners of the land in that section, and after having given ten days' notice to the own-- ers of the adjoining lands, and for the purpose of establishing and perpetuating the south-east and the south-west corners of the section, proceeded upon such notice to make the required survey and location; and that the line, as he established it, called the McDaniel line, would give the plaintiffs the land described in their complaint. He made all the proper entries and record of the survey, and no appeal was taken from it. There was some evidence given by the plaintiffs, tending to show that the McDaniel line was the true one, but this we regard as unimportant, for reasons to be hereinafter stated. Afterward, Sidney S. Lyon, then county surveyor, made another survey of the line, and by his survey the land in dispute would fall on the defendant's side of the line. Still later one William W. Farris surveyed the line. In reference to this last survey, Charles Herbst, one of the plaintiffs, having testified to some matters in chief, said, on cross-examination, that the defendant enclosed the land five or six years ago. W. W. Farris, a surveyor, surveyed the land at that time; the fence was built one-half on each side of the line when Farris ran the line. The witness was then seven or eight years old; that he did not know which was the right line when Farris ran the line; that they did not give any notice to him of that survey; he was present at the survey. In response to a question by the plaintiffs, he said: " Three years ago, I told the defendant to move the fence he had put up, back to the line between the sections, called the McDaniel line, and he would not."

The defendant gave the following testimony in respect to the survey of Farris, and the building of the fence, etc.

William W. Farris testified: " I saw the stone at the

corner of section 16, spoken of by Kiefer, but I did not think that the true corner. That stone was planted there by McDaniel when he made his survey."

Peter Smith testified: "I was present · at the building of the fence between Charles Herbst and my father, the defendant. The fence was put where Farris ran the line. The plaintiff Charles Herbst was present when the line was run. Charles Herbst said: 'Put the fence on the line.' · Charles helped to. pay for that survey. The defendant has been in possession ever since."

Nicholas Robbins testified: " The plaintiff Charles Herbst, defendant Smith, and I agreed to have Dr. Farris make a survey. Charles Herbst was present at the survey. The fence was put on the Farris line. * * * * I hold now to the Lyon's line. The Farris survey was made on the Lyon's line. Charles Herbst helped to pay the expense of running that line."

Mathias Engle testified : " I was present at the Farris survey. Charles Herbst was there. There was a dispute about the McDaniel and Lyon's line, and we all agreed to have Farris run a line we could stand to. I think Farris ran his line on the Lyon's line. · All were satisfied then with the Farris survey."

Charles Herbst testified, in rebuttal, that "No corner was established by William W. Farris when he made the survey spoken of by the defendant's witnesses."

It is claimed by counsel for the appellants, that, on these facts, the line called the McDaniel line must be regarded as the true line, and that there is nothing in the record to estop or otherwise preclude them from claiming up to that line; and, consequently, that they were entitled to a new trial.

We have no brief for the appellee.

The first, and what seems to us to be the main, question in the case, viz., whether the McDaniel line must be

taken to be the true line, must depend, for its solution, upon the construction to be given to the act approved June 17th, 1852, on the subject of county surveyors. 1 R. S. 1876, p. 864.

The 3d section of the act provides, that, "Whenever the owner of any land within this State, after having given ten days' notice to the owners of adjoining lands, if such owners reside in the county, and if not, by publication three weeks successively in a newspaper nearest to such land, shall desire to establish, relocate or perpetuate, any corner thereof, or in the same section or line thereof, such county surveyor shall proceed to make the required surveys and location, and if a corner is to be perpetuated, shall deposit in the proper place a stone or other durable material with the letters and figures answering to such corner, and shall, also, enter in his field-notes, one or more bearing trees, if there be such, the species and size, course and distance thereof, (and if there be no trees, then he shall deposit one or more stones as witnesses to said corner), all of which proceedings shall be entered by him in a book to be kept for that purpose," etc.

" Sec. 8. The survey of such surveyor shall be *prima facie* evidence in favor of the corners so established, and the lines so run, but an appeal may be taken to the circuit court within three years, and such court may reverse such survey; and upon such appeal being prayed for by any person, such surveyor shall forthwith transmit the papers in his hands touching the same, and copies of the field-notes in the case complained of, without requiring an appeal bond, and such court, in the trial of such appeal, may receive evidence of other surveys of the same premises, made by the same or other persons, either before or since the one complained of, and if such court shall decide against such surveyor, it shall enter an order for a resurvey, and such new survey may be made by any

other competent person whom the court may designate, from whose decision an appeal may be in like manner had."

It is clear to our minds, that the Legislature intended that, when a survey should be made in accordance with that statute, it should be conclusive unless appealed from as therein provided for.

There would not only be little necessity or use of an appeal, but there would be little certainty as to corners, lines and boundaries, if the question could be reopened as often as a new surveyor might come in, or as often as any of the landholders affected by the survey might desire to have the question reopened. The statute says, " The survey of such surveyor shall be *prima facie* evidence in favor of the corners so established, and the lines so run, but an appeal may be taken," etc. The object of the statute was, as we think, to make such survey *prima facie* evidence, etc., during the time in which an appeal could be taken, and perhaps pending an appeal when taken; but, where no appeal is taken, the survey becomes, after the time limited therefor, conclusive. Otherwise, such survey settles nothing that may not, upon a new survey and without any appeal, be unsettled. A new survey may doubtless be had, not for the purpose of establishing the corners, lines or boundaries, as an original survey; but for the purpose of re-locating or perpetuating the corners, lines or boundaries established by such original survey, where they have become obscured or lost.

In this case, there is no trouble as to the survey made by McDaniel, and we think it clear that the plaintiffs' rights as to boundary are to be governed by that survey, without reference to any subsequently made. There is nothing in the evidence that estops the plaintiffs to claim up to the line established by the survey made by

McDaniel. Bigelow Estoppel, 468-470 ; *Ball* v. *Cox*, 7 Ind. 453 ; *Meyers* v. *Johnson*, 15 Ind. 261.

The judgment below is reversed, with costs, and the cause remanded for a new trial.