T. GLADYS CRISS *v*. WAYNE JOHNSON.

[No. 1-775A126. Filed June 1, 1976. Rehearing denied July 13, 1976.]

*George B. Mathes, George W. Languell, Languell and Mathes,* of Spencer, for appellant.

*Wallace H. Grosbach,* of Brazil, for appellee.

## FACTS:

LOWDERMILK, J.—In 1973, Criss desired to survey the west boundary line of her property, and, pursuant to IC 1971, 17-3-63-3 (Burns Code Ed.), secured the services of the county surveyor and notified Johnson, who was the landowner immediately east of Criss' property.

After the completion of the survey, Johnson received notice from the surveyor that a legal survey was filed on June 29, 1973. No action was taken by Johnson until November 21, 1973, when an appeal from the survey was filed in the Clay Circuit Court. This appeal was subsequently dismissed on Criss' motion, which alleged that the time period for perfecting such an appeal had expired in October of 1973. In dismissing the appeal, however, the court granted Johnson leave to file an amended complaint.

In January, 1974, Johnson filed his amended complaint, in which the legal survey was not attacked as incorrect, and in which Johnson asserted title to the disputed strip of land by adverse possession. It was, and is, Johnson's contention that the "actual" boundary between the properties is marked by a post and "headrow" (an uncultivated narrow strip of land) which was always observed as the true dividing line between the land holdings.

### ISSUES:

Criss raises the following issues in her brief:

1) Whether the trial court erred in granting Johnson leave to file an amended complaint;

2) Whether it was error for the trial court to overrule her motion to dismiss Johnson's amended complaint to quiet title.

Given the nature of the action here appealed, and the substance of Criss' argument, we find that a resolution of the questions necessarily involves a consideration of essentially the same material. Therefore, we will discuss the questions as one.

In support of her contention that Johnson should not have been allowed to file his amended complaint, Criss relies heavily on the statutory provisions which set out the procedure for obtaining, and the ultimate effect of, a legal survey:

"Surveys shall become legal surveys in the following manner:

308

Any landowner desiring to establish the location of the line between his land and that of an adjoining landowner may do so as follows:

(a) He shall procure a land surveyor licensed in this state to locate the line in question and shall compensate such land surveyor.

(b) The land surveyor shall notify the owner or owners of adjoining lands that he is going to make the survey, which notice shall be given by registered or certified mail at least twenty [20] days before the survey is started.

(c) Whenever all the owners of the adjoining lands shall consent in writing, the notice shall not be necessary.

(d) The lines and corners shall be properly marked, monumented by durable material with letters and figures establishing such lines and corners, referenced, and tied to corners shown in the corner record book in the office of the county surveyor, or to corners shown on a plat recorded in the office of the county surveyor, the plat books in the office of the county recorder.

(e) The land surveyor shall present to the county surveyor for entry in the legal survey record book, a plat of such legal survey, together with proof of notice to the adjoining landowner or landowners, or waiver of such notice. Notice shall be given by the land surveyor to adjoining landowners by registered or certified mail within ten [10] days after filing of the survey.

(f) *The lines, as herein located and established, shall be binding upon all landowners affected, their heirs and assigns, unless an appeal is taken as provided for by 1 R.S. 1852, ch. 103, Section 8 [17-3-58-5], as amended.* The right to appeal shall commence when the plat of the legal survey is recorded by the county surveyor in the legal survey record book. [Acts 1969, ch. 96, § 3, p. 215.]" (Our emphasis.) IC 1971, 17-3-63-3 (Burns Code Ed.)

"The survey of such surveyor shall be prima facie evidence in favor of the corners so established and the lines so run, but an appeal may be taken to the circuit court within ninety [90] days where notice is served on a resident of the county, and within one [1] year where notice is by publication, and such owner is a nonresident of the county, and such court may reverse such survey. Upon such appeal being prayed for by any person, such surveyor shall forthwith transmit the papers in his hands touching the same, and copies of the field notes in the case complained

of, without requiring an appeal bond; and such court, in trial of such appeal, may receive evidence of other surveys of the same premises, made by the same or other persons, either before or since the one complained of; and if such court shall decide against such surveyor, it shall enter an order for a resurvey, and such new survey may be made by any other competent person whom the court may designate, from whose decision an appeal may be had in like manner." IC 1971, 17-3-58-5 (Burns Code Ed.)

Criss first argues that the appeal from the survey was in effect an answer or counterclaim to the survey, and that Ind. Rules of Procedure, Trial Rule 13 would require all claims arising from the survey to be pleaded or lost. Thus Criss contends that inasmuch as the motion to dismiss the appeal was a valid judgment against Johnson, it was conclusive as to all defenses which were raised and which *could* have been raised.

Criss also contends that IC 1971, 17-3-63-3, *supra,* is a new statute which is entirely different from prior acts. It is Criss' argument that the Legislature conclusively, and for the first time, established the legal effect of a statutorily correct survey. Criss asserts that such clear legislative action is unassailable and determinative of Johnson's arguments on appeal.

We agree that IC 1971, 17-3-63-3, *supra,* goes beyond the prior statutes in that the effect of an uncontested legal survey is plainly set out. Further, it would require a particularly strained view of the statute and the facts to conclude other than that Johnson's failure to timely appeal the survey binds him to the line as surveyed. We note that cases interpreting IC 1971, 17-3-58-5, *supra,* contain language which makes the past and present statutes quite similar in this respect.

". . . The statute says, 'The survey of such surveyor shall be *prima facie* evidence in favor of the corners so established, and the lines so run, but an appeal may be taken,' etc. The object of the statute was, as we think, to make such survey *prima facie* evidence, etc., during the time in which an appeal could be taken, and perhaps pending an appeal when taken; but, where no appeal is taken, the survey becomes, after the time limited therefor, conclusive. . . ." *Herbst et al.* v. *Smith* (1880), 71 Ind. 44, 48.

*See also, Holewiak* v. *Jones* (1972), 151 Ind. App. 588, 281 N.E.2d 113, 116, where this court expressly affirmed *Herbst.*

Yet, even if we conclude that the statute has the effect of foreclosing attacks on a legal survey, such a conclusion does not entirely dispose of the question presented. Johnson clearly concedes the correctness of the line as surveyed. The thrust of Johnson's amended complaint and argument on appeal is that notwithstanding the accuracy of the line as surveyed, he may still assert *title* to the land in dispute based on adverse possession.

In opposition to Johnson, Criss cites the case of *Nasser* v. *Stahl, et al.* (1956), 126 Ind. App. 709, 134 N.E.2d 567. In that case a survey was appealed within the time set therefor, and the appellant also asserted title by adverse possession. The court held that a quiet title action *could* be so filed. We do not find language in *Nasser* which states that such an action *must* be filed within the the time allotted by statute, and the case is not entirely dispositive of the issue at hand.

We have been unable to locate a decision of this or our Supreme Court which deals with the question under the present statute. Thus, while we recognize some difference between the past and present statutes, in light of cases such as *Herbst* v. *Smith, supra,* which minimize such differences, we turn to a consideration of cases decided under the prior statutory provisions.

One of the earlier cases to discuss the problem of surveys and quiet title actions was *Cleveland* v. *Obenchain* (1886), 107 Ind. 591, 8 N.E. 624. Our Supreme Court, in passing on the question of the admissibility of certain parol evidence, made the following comments:

". . . As boundaries may be fixed by possession and by estoppel, it is proper to introduce evidence tending to prove possession for the statutory period, or to prove possession for a shorter period, conjoined with facts constituting an estoppel.

"A land-owner who submits to a survey does not by so doing lose any of his land. In submitting to a survey he

does not surrender any valid title that he may have, no matter how it may have been acquired. *In not objecting to a survey he does not put himself in the position of surrendering his land, or any part of it.* The object of the statute, in permitting the parties to try the correctness of the survey, was not to confine either to a mere paper title, but to permit them to establish the true title and boundary lines, howsoever acquired or fixed. It would produce great confusion and work much injustice if parties could only try the correctness of a survey by the descriptions found in the conveyances. It is a familiar rule that it is not the office of a description to identify lands, but simply to furnish the means of identification. *Rucker* v. *Steelman,* 73 Ind. 396; *Lanman* v. *Crooker,* 97 Ind. 163 (49 Am. R. 437). Parol evidence is, therefore, often necessary to make descriptions intelligible." (Our emphasis.) 107 Ind. at 592, 593, 8 N.E. at 624.

The above indicates that a survey does not necessarily settle title to land, but it does not state *when* the quiet title action must be brought.

The question of timeliness was, however, specifically mentioned in later cases. In *Spacy* v. *Evans* (1899), 152 Ind. 431, 52 N.E. 605, Spacy caused a survey to be made which showed that the existing boundary line intruded upon Evans' property. The court then stated:

"Appellant contends, that because appellee procured this survey to be made, he is conclusively bound by it, and hence, that the finding of the court is contrary to law.

"We do not so interpret the statute. The owner of land who causes a survey to be made agreeably to the provisions of the statute, or who consents to a survey, loses none of his rights by such proceeding or consent. *The fact that he has caused a survey to be made, or has consented to one, does not estop him from claiming title to his land notwithstanding such survey remains unappealed from.* By such survey he is deprived of no right of action or defense arising from possession, or any other source of title. An official survey is, as the statute declares, *prima facie* evidence in favor of the corners so established, and the lines so run, and nothing more. Its legal effect is merely to furnish one species of evidence, which may or may not be material, in the determination of a question of title, and which may be entirely controlled and overcome by evidence of another

kind, such as proof of adverse possession under claim of title for twenty years, a valid agreement with the adjoining owner for a different line, and the like." (Our emphasis; citations omitted.) 152 Ind. at 433, 434.

We note that under the present statute the uncontested survey is not merely *prima facie* evidence, but is *binding* as to the true corners and lines. Nonetheless, the *Spacy* decision accords great weight to evidence of adverse possession, and demonstrates that a legal survey does *not* determine title. For cases with similar holdings, *see*, *Wood* v. *Kuper* (1898), 150 Ind. 622, 50 N.E. 755; *Logsdon* v. *Dingg* (1903), 32 Ind. App. 158, 69 N.E. 409; *Helton* v. *Fastnow* (1904), 33 Ind. App. 288, 71 N.E. 230.

It must be noted that all of the above cases were decided after *Herbst* v. *Smith, supra,* which settled the question of the finality of surveyed lines. Thus, even though the prior statute spoke only of *prima facie* evidence, cases decided under that statute held that such evidence was conclusive once the appeal period was past. Notwithstanding such a holding, however, the cases last cited can be read for the proposition that even an undeniably correct survey could not establish or defeat title. Such a holding was implicitly recognized by this court in *Cazarus* v. *Blevins* (1974), 159 Ind. App. 512, 308 N.E.2d 412, 414, 415, a case involving, *inter alia,* a quiet title action, where it was stated:

"We are of the opinion that those statutes dealing with a legal survey (IC 17-3-58-5, Ind. Ann. Stat. § 49-3313 (Burns 1964); IC 17-3-63-3, Ind. Ann. Stat. § 49-3342 (Burns 1973 Supp.)) are not germane to the issues of this case in that they relate to an entirely different procedure to determine boundaries and not, necessarily, to reform a land contract or to quiet title."

We believe the above cases correctly state the law, and now hold that a quiet title action may be filed beyond the statutory period allowed for appealing a legal survey. We do not find that the present statutes proscribe the filing of such an action beyond the appeal period. The pro-

piety of our position is emphasized when one considers that a quiet title action in which the survey is taken as correct could be filed *within* the ninety (90) day period allowed for appealing surveys. Thus, the question presented by such prompt action is, as here, one of *title,* not measure or mathematical accuracy. Certainly the boundary as surveyed is evidence which would be properly admissible in a quiet title action. However, such evidence, even if it is considered conclusively accurate, cannot negate other evidence that one party has adversely occupied land not contained within the lines as surveyed.

We further find that IC 1971, 17-3-67-1 (Burns Code Ed.), which requires the trial court to find the true boundary line if a prior survey is found to be incorrect, does not provide an adverse claimant adequate relief. There is nothing in the above statute which would assure an adverse claimant that the new line found by the court would coincide with the "true" or "actual" line claimed. Thus, while a boundary line may be changed by the circuit court on appeal, such a change may not give complete satisfaction and does not settle the question of title.

The statutes above are survey statutes, and we decline to expand their purpose or effect to include the limitation of certain actions or the determination of title to land. If the Legislature had desired to *require* all title actions to be filed in conjunction with survey appeals it could have easily included such a requirement—it did not.

Finally, we conclude that TR. 13 does not require that a quiet title action be joined with a survey appeal.

From the above, it follows that we also hold that it was not error for the trial court to grant Johnson leave to file his amended complaint.

Judgment affirmed.

Robertson, C.J. and Lybrook, J., concur.

NOTE.—Reported at 348 N.E.2d 63.