Carole J. SCHULER, Appellant–Defendant,

v.

Michael R. GRAF and Sara Graf, Appellees–Plaintiffs,

James Graf and Leanne Graf, Appellees–Plaintiffs.

No. 15A01–0604–CV–155.

Court of Appeals of Indiana.

March 16, 2007.

Maggie L. Smith, Darren A. Craig, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellant.

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellees.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Carole J. Schuler appeals the trial court's judgment ordering specific performance of a land sale contract executed between Schuler and James and Leanne Graf.

We affirm.

### ISSUES

1. Whether the contract for the sale of real estate was sufficiently definite to satisfy the Statute of Frauds.
2. Whether the trial court abused its discretion in ordering specific performance.

### FACTS

Schuler owned approximately one hundred and forty-nine (149) acres of land located in Dearborn County. In 2004, the Grafs expressed interest in purchasing some of Schuler's land. After several discussions, Schuler agreed to sell the Grafs part of her land that was located "to the south of [Schuler's] house." (Tr. 41). Namely, Schuler agreed to sell the Grafs two contiguous parcels: Parcel A and Parcel B. Parcel A and Parcel B consisted of approximately eleven acres, with Parcel A consisting of approximately five acres and Parcel B consisting of approximately six acres. James and Schuler discussed the boundaries of both parcels while they walked some of the land, and James "spray painted a fence post top orange" to show Schuler "what would be the . . . northern boundary on the eastern side." (Tr. 43). James also showed Schuler "where a hundred feet from [her] house would be . . ." by drawing "a line in the dirt. . . ." (Tr. 43; 53).

On October 29, 2004, Schuler and the Grafs entered into a land contract (the "Contract"), prepared by the Grafs' attorney, whereby Schuler agreed to sell property to the Grafs. The Contract described the property to be sold as follows:

> Two surveyed parcels, identified as Parcel A, being approximately 5 acres; and Parcel B, being approximately 6 acres. The exact acreage to be determined by a survey, the costs of which shall be shared equally by [Schuler] and [the Grafs]. The boundaries of the two parcels have been agreed upon by the parties. The two parcels are part of the real estate of [Schuler] which is more particularly described in an Affidavit recorded in Deed Record 273 @ page 374 in the office of the Dearborn County Recorder.

(App. 29). The Contract further provided that "[u]pon completion of the survey the two legal descriptions shall be attached to this contract." (App. 29). The Grafs paid Schuler earnest money in the amount of $2,000.00 upon signing the Contract.

The Grafs subsequently arranged to have a survey completed, telling the surveyor the approximate corners of the property. On or about January 16, 2005, Schuler sent a letter to the Grafs, asserting that "[t]here is no accurate legal description of the property," and "[t]he contract does not reflect meeting of the minds." (App. 40).

Upon its completion in February of 2005, the survey indicated that Parcel B,

referred to as Lot 1 in the survey,[1] was 7.64 acres. Disputing the boundaries shown on the survey, Schuler refused to sign the paperwork required by the county to subdivide property and indicated that she no longer wanted to sell the parcels.

On April 28, 2005, the Grafs filed a complaint for specific performance of the Contract, seeking to compel Schuler to convey the parcels to the Grafs. The Grafs also filed a lis pendens notice on May 19, 2005. On July 11, 2005, Schuler filed her answer, asserting the following affirmative defenses: (1) "failure to satisfy the statute of frauds due to the fact that the purported contract represented be [sic] a written agreement between the parties, contains no sufficient metes and bounds description of the property in question"; (2) there was no meeting of the minds because "the survey[ ] var[ies] from the thoughts and consideration of what the Defendant had and [is] clearly not similar with what she verbally discussed with the Plaintiff"; and (3) the Contract is unenforceable. (App. 21–22).

The trial court held a bench trial on November 22, 2005. During the trial, James testified that after he and Schuler had walked the property, they "agreed that the east boundary [for the parcels] would be the tree line on the eastern side ..." and that a fence post, which James had spray painted orange, "represented what would be ... the northern boundary [of Parcel A] on the eastern side." (Tr. 42, 43). James further testified that he intended Parcel A's northern boundary to extend west, towards Old State Road 1, "in such a manner to pass within one hundred feet of [Schuler's] existing home." (Tr. 43). James testified that he showed Schuler "where a hundred feet from [her] house would be and [they] agreed it would go from the orange post through that point

... straight towards the road," which would act as the western boundary for both parcels. (Tr. 43). James further testified that he and Schuler agreed that Parcel B's southern boundary would be marked by the north boundary of the neighbors' property.

James testified that the survey initially depicted the parcels' eastern boundary lines at a point beyond a fence line, but after Schuler stated during a deposition that she believed the fence line would mark the eastern boundary, it was "resurveyed to reflect that." (Tr. 45). Moving the eastern boundary resulted in Parcel B being reduced from 7.64 acres to 6.896 acres.

During the trial, Schuler affirmed that she had agreed to sell to the Grafs some property, which was "south of [her] house" and "east of State Road 1." (Tr. 79). Schuler further affirmed that the southern boundary of property she intended to sell the Grafs "coincide[d] with [the] south boundary" of her property. (Tr. 80). Schuler testified that she believed the eastern boundary of the parcels would not extend beyond a certain fence line. Schuler also testified that she and James discussed that the northern boundary of Parcel A would pass 100 feet from her residence, through the orange post and "go straight to the road." (Tr. 80). Schuler further testified that she believed the west point of the northern boundary would end at a point somewhere between a culvert and a utility pole to the south of the culvert. (Tr. 80). The original and second surveys, however, marked the northwest corner at a point north of the culvert.

On January 26, 2006, the trial court entered its judgment, finding in pertinent part as follows:

---

1. The survey referred to Parcel A as Lot 2.

Carole J. Schuler is the fee simple owner of a tract of land located in Section 24, Township 7 North, Range 2 West located in Kelso Township, Dearborn County, Indiana.

\* \* \*

On October 29, 2004[,] James and Leanne entered into a land contract to purchase certain land from [Schuler] from the same tract. That description read as follows:

Two surveyed parcels, identified as Parcel A, being approximately 5 acres; and Parcel B, being approximately 6 acres. The exact acreage to be determined by a survey, the costs of which shall be shared equally be [sic] [Schuler] and [the Grafs]. The boundaries of the two parcels have been agreed upon by the parties. The two parcels are part of the real estate of [Schuler] which is more particularly described in an Affidavit recorded in Deed Record 273 @ page 374 in the office of the Dearborn County Recorder. Upon completion of the survey the two legal descriptions shall be attached to this contract.

[T]he evidence shows there was a meeting of the minds on this description. That agreement was for the sale of that portion of [Schuler]'s real estate that was bordered on the south by the adjoining real estate, on the west by Old State Road One to a point from the south boundary north and east to a point that would make the northern or northeastern boundary a point that creates a line roughly parallel to and 100 feet south of the south side of [Schuler]'s house. Thence back to a point marked with paint that is the start of a tree and fence line. From there the route goes in a straight line closely paralleling the tree line to the south boundary of [Schuler]'s property. The buyers, at the request of the seller, altered that description so as to not include the fence line. This description is set forth in Plaintiff's Exhibit 7. . . .

There being a meeting of the minds as to the subject matter of this contract, the contract should be honored.

(App. 5–9). Schuler filed a motion to correct error on February 22, 2006, which the trial court granted in part to correct a scrivener's error.

## DECISION

 Specific performance is an equitable remedy, directing "the performance of a contract according to the precise terms agreed upon, or substantially in accordance therewith." *Wenning v. Calhoun,* 811 N.E.2d 933, 935 (Ind.Ct.App. 2004), *reh'g granted on other grounds,* 827 N.E.2d 627 (Ind.Ct.App.2005), *trans. denied.* Whether to grant specific performance is within the trial court's discretion, and we will review the trial court's decision for an abuse of that discretion. *Id.*

### 1. Statute of Frauds

 Schuler asserts the trial court erred in ordering specific performance of the Contract because the Contract does not satisfy Indiana's Statute of Frauds (the "Statute"). Specifically, Schuler claims that the Contract fails to contain the essential terms of a contract to satisfy the Statute because it does not provide a legal description of the land to be sold. Whether a writing satisfies the Statute is a question of law, which we review de novo. *Young v. Adams,* 830 N.E.2d 138, 141 (Ind.Ct.App.2005), *trans. denied.*

 The Statute does not govern the formation of a contract but only the enforceability of contracts that have been formed. *Fox Development, Inc. v. England,* 837 N.E.2d 161, 165 (Ind.Ct.App.

2005). The Statute provides that a person may not bring an action involving any contract for the sale of land

> unless the promise, contract, or agreement on which the action is based, or a memorandum or note describing the promise, contract, or agreement on which the action is based, is in writing and signed by the party against whom the action is brought or by the party's authorized agent[.]

Ind.Code § 32–21–1–1(b). "[A]n agreement required to be in writing must completely contain the essential terms *without resort to parol evidence* in order to be enforceable." *Coca–Cola Co. v. Babyback's Int'l, Inc.,* 841 N.E.2d 557, 565 (Ind. 2006) (emphasis added). Thus, parol evidence may not be relied upon to provide the essential terms of a document. *See National By–Products, Inc. v. Ladd,* 555 N.E.2d 518, 520 (Ind.Ct.App.1990) ("A written contract which leaves some essential term thereof to be shown by parol, is only a 'parol contract' not enforceable under the Statute of Frauds.").

Therefore, first we must consider whether the Contract satisfied the Statute.

> Under the Statute, an enforceable contract for the sale of land must be evidenced by some writing: (1) which has been signed by the party against whom the contract is to be enforced or his authorized agent; (2) *which describes with reasonable certainty* each party and *the land;* and, (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom the promises were made.

*Johnson v. Sprague,* 614 N.E.2d 585, 588 (Ind.Ct.App.1993) (emphasis added). Regarding whether the land is described with reasonable certainty,

> it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject matter. The terms may be abstract and of a general nature, if with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended, *to the exclusion of all other property.*

*Cripe v. Coates,* 124 Ind.App. 246, 116 N.E.2d 642, 644–45 (1954). Thus, " '[i]t is a familiar rule that it is not the office of a description to identify lands, but simply to furnish the means of identification.' " *Harlan Bakeries, Inc. v. Muncy,* 835 N.E.2d 1018, 1031 (Ind.Ct.App.2005) (quoting *Criss v. Johnson,* 169 Ind.App. 306, 348 N.E.2d 63, 66 (1976)).

In this case, the Contract adequately identifies or provides a means of identifying Schuler's property. The Grafs, however, sought to purchase parcels carved out of Schuler's 149–acre property, and the Contract describes those parcels only "as Parcel A, being approximately 5 acres; and Parcel B, being approximately 6 acres." (App. 29).

▉ Where the seller is conveying a tract of land that is part of a larger tract owned by the seller, " '[w]hether or not the writing satisfies the statute as to description will depend upon *whether within itself or by references made* it does or it does not in practical effect describe or designate the part covered by the contract.' " *Cripe,* 116 N.E.2d at 645 (alteration in original) (citation omitted). In *Cripe,* the court looked at cases from other jurisdictions and found persuasive those which have held that "merely describ[ing] the area or dimensions of the land sold, but not fixing the boundary between the land sold and the seller's remaining lands," does not satisfy the Statute. *Id.*

In this case, the Contract only describes the property to be sold in terms of acreage, without providing boundaries, making it impossible from the initial description given to determine exactly where in Schuler's 149–acre property the approximate 11 acres to be sold are located. The Contract therefore does not appear to satisfy the Statute where, without more, it only describes the parcels in terms of acreage.

The Contract, however, does refer to a survey, which would supply the parcels' legal descriptions. This survey, however, had not been completed when the parties first entered into the Contract.

"[I]n the case of any signed paper, those writings referred to in it may be read, provided they were in existence at the time when the paper referring to them was signed." *Block v. Sherman,* 109 Ind. App. 330, 34 N.E.2d 951, 954 (1941). Because the survey was not in existence at the time the parties entered into the Contract, it cannot furnish the means of identification necessary to describe with reasonable certainty the land sold by Schuler. *See Thompson v. Griffith,* 79 Ind.App. 60, 133 N.E. 596, 597 (1922) (finding no reference could be made to an abstract to identify the land to be sold "where the abstract was not in existence at the time of the contract"). Our analysis, however, does not end here.

Although the Contract did not set forth the precise boundaries of the parcels to be sold, it did provide that "[t]he boundaries of the two parcels have been agreed upon by the parties." (App. 29). Thus, it is the agreement of the parties, which was to "'furnish the means of identification.'" *Id.* Therefore, the Contract does satisfy the Statute.[2]

Once it was determined that the Contract met the requirements of the Statute, the trial court could properly admit the parol evidence to complete the legal description of the property to be sold. *See Harlan Bakeries,* 835 N.E.2d at 1031 ("'Parol evidence is ... often necessary to make descriptions intelligible.'") (quoting *Criss,* 348 N.E.2d at 66); *Randolph v. Wolff,* 176 Ind.App. 94, 374 N.E.2d 533, 536 (Ind.Ct.App.1978) (finding that where a description of land is consistent but incomplete, parol evidence may be admitted to complete the description and identify the property).

In this case, the testimony of both Schuler and James confirms that they walked Schuler's property and essentially agreed on the boundaries of the parcels, using certain landmarks, adjacent boundaries and monuments to mark those boundaries. Thus, the parties' description of the property was sufficiently definite to meet the Statute's requirements.

Schuler and James, however, neglected to identify the boundary of the northwest corner of Parcel A, only agreeing that the northern boundary would extend west, towards the road, which would act as the western boundary. The trial court therefore properly relied on parol evidence to complete the description and identify the parcels to be sold, thereby enabling the trial court to order specific performance.

---

**2.** We note that Schuler's testimony regarding where the parties agreed the boundaries would lie almost perfectly corresponded with James' testimony regarding the boundaries. Thus, this is not a case where finding that the action is barred by the Statute would satisfy the purpose of the Statute, namely "to preclude fraudulent claims that would likely arise when the word of one person is pitted against the word of another," and "to remove the temptation of perjury by preventing the rights of litigants from resting wholly on the precarious foundation of memory[.]" *Brown v. Branch,* 758 N.E.2d 48, 51 (Ind.2001) (internal citations omitted).

## 2. *Meeting of the Minds*

■ Schuler also asserts that "assuming *arguendo* that the [C]ontract did not violate the [Statute], the trial court still erred in finding there was a meeting of the minds sufficient to order specific performance." Schuler's Br. 11. Specifically, Schuler argues that there was no meeting of the minds regarding the location of the eastern boundary for the parcels, as demonstrated by the fact that the Grafs prepared a revised survey, "which *changed* the boundaries in the first survey from what James testified had been the parties['] agreement—into the contract the court ordered enforced." Schuler's Br. 22. Schuler therefore maintains that the "trial court abused its discretion in taking the legal description from the revised survey and ordering specific performance based on that revised survey." Schuler's Br. 23.

> If a party cannot demonstrate agreement on one essential term of the contract, then there is no mutual assent and no contract is formed. A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract. Whether a set of facts establishes a contract is a question of law.

*Fox Development*, 837 N.E.2d at 165 (internal citations omitted).

Regarding the eastern boundary, James testified as follows:

> We agreed that the east boundary would be the tree line on the eastern side of that field. There's a fence line there, along with a row of trees. I wanted to have the trees, in order to have a backdrop from my home, and therefore that was agreed to be the eastern boundary.

(Tr. 42). James further testified that

> [i]nitially, upon survey, [the eastern boundary line] went beyond the fence line to include both the trees that were there and the fence line. Upon the de-

position of Carole, I was informed that she did not agree that it went past the fence line. She stated that it should have went ... along the fence line, right—basically the fence line would be the boundary. Since then, it's been re-surveyed to reflect that.

(Tr. 45). According to James' testimony, "the new survey reflect[s] the eastern boundary to coincide with the fence line and tree line on the eastern corner of that field." (Tr. 46).

At trial, Schuler affirmed that she thought she was "selling only to the fence and not beyond the fence ..." and that there was "a tree line there located among the fence...." (Tr. 80).

Clearly, the parties entered into a contract for the sale of real estate. Furthermore, from the testimony given, we cannot say that the parties failed to agree on the location of the eastern boundary where James testified that they "agreed that the east boundary would be the tree line on the eastern side of that field. There's a fence line there, along with a row of trees," (Tr. 42), and Schuler testified that she understood the eastern boundary to be at the fence line and that there was a tree line located "among the fence[.]" (Tr. 80).

That the first survey did not accurately reflect the parties' agreement does not constitute a failure to come to a meeting of the minds at the time the parties entered into the Contract. Accordingly, we find Schuler's argument is without merit.

Affirmed.

BAKER, C.J., and ROBB, J., concur.