**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 24 2012, 9:08 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**PATRICK T. MCFADDEN**
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**JERE L. HUMPHREY**
Wyland, Humphrey, Wagner & Clevenger, LLP
Plymouth, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MATTHEW M. DERRICK, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1204-ES-178 |
| | ) | |
| ESTATE OF RUTH F. KORN, | ) | |
| | ) | |
| Appellee. | ) | |

APPEAL FROM THE ST. JOSEPH PROBATE COURT
The Honorable Peter J. Nemeth, Judge
Cause No. 71J01-1104-ES-91

**September 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

Matthew Derrick filed a claim against the Estate of Ruth Korn ("the Estate") alleging that, based on an agreement with Korn, he is entitled to a life estate in real property owned by Korn at her death, as well as payment for services rendered in maintaining that property. Following a hearing, the probate court disallowed Derrick's claim of a life estate and payments for maintenance of the real property under the agreement, and Derrick appeals.

We affirm.[1]

## FACTS AND PROCEDURAL HISTORY

Derrick and Korn, a widow with two grown children, were close friends for approximately eighteen years before her death on April 9, 2011. Korn owned real estate consisting of approximately 200 acres in St. Joseph County, and she lived in an old farm house on the property until shortly before her death. In the course of their friendship, Derrick frequently helped Korn around the house. And, in early 2011, Korn hired Derrick to make some minor improvements to the house after it had been burglarized a couple of times.

On March 8, 2011, Korn and Derrick entered into an agreement ("the agreement") whereby Derrick would live in and maintain the farm house, with Korn "spend[ing] some time on the farm" until her death. Exhibit B at 3. In exchange, Korn would pay Derrick "a monthly caretaker[']s fee equal to 40 [hours] a week at minimum wage rates as established by the federal law." Id. at 1. And Derrick would have a

---

[1] The Estate raises two issues on cross-appeal, but we find those issues inapposite and affirm the probate court without addressing the cross-appeal.

2

> life long lease for ($1) for him and his chosen partner.  To live on and control the property, and maintain as they see[] fit as their home.  This shall include use of all the outbuildings and land that is not farmed as of 01/06/11.  They shall become the caretakers of [Korn's] beloved home and property for their lifetime[s].

Id.  The agreement contains a provision that states:  "This agreement shall not be change[d] or canceled once Matt has started to work on the house."  Id. at 3.  In addition, Derrick had typed the agreement based upon handwritten notes that Korn had made, and those notes include a provision stating that it was a "lifetime agreement unless one chooses to change."  Transcript at 36; Exhibit 8.

In early April 2011, before Korn's death, Thomas Mannen, Korn's grandson and attorney-in-fact, and Mark Wagner, also Korn's attorney-in-fact, prepared a document entitled "Termination of Purported Agreement" whereby Derrick, Mannen, and Wagner would agree to cancel the March 8 agreement.  Wagner signed the document, but Derrick refused to sign.  After Korn's death on April 9, Derrick filed a claim against the estate alleging that

> Ruth F. Korn contracted and/or gave claimant Matthew M. Derrick a Life Estate in the property she owned at 27386 Alden Road, New Carlisle Indiana north of the toll road, including outbuildings, and land which is commonly known as the original homestead as well as a monthly income for the maintenance of said property.  The writings evidencing said contract (typewritten document dated March 8, 2011) and [sic] are attached hereto.  There is also a claim for services rendered to the decedent (attached hereto) for $1248.00.

> Claimant states that the account against the above estate is correct; that no payments have been made except those credits given; that there are no set-offs against the same; that the balance shown in said account is: $1248.00 for services rendered and the remaining financial compensation is for services rendered in connection with the Life Estate and is incapable of being known at this time.

3

Appellant's App. at 20.

On January 3, 2012, the Estate disallowed Derrick's claim. The Estate then filed a Request for Trial with the probate court. Following trial, the probate court entered the following findings and conclusions:

## FINDINGS OF FACT

1. Matthew Derrick (claimant) filed a two-part claim, one part of which is for the sum of $1,068.00.[2] This is not contested by the Estate.
2. The other part of the claim arises out of a document dated March 8, 2011, (Exhibit B) which purports to grant a life estate in decedent's real estate to Matthew Derrick in exchange for his restoring and maintaining the property. This is contested by the Estate.
3. The affected property is defined in Claimant's Exhibit B as "All outbuildings and land or what is known as the original homestead, (all land north of the toll road.)"
4. Exhibit B contains some testamentary language but is not witnessed by two people.
5. Claimant did handyman chores for Ruth Korn (decedent).
6. Claimant took decedent out to lunch or dinner three (3) times per week.
7. The farm house on the property has not been restored or maintained.
8. The property consists of approximately 200 acres.
9. The agreement (Exhibit B) was prepared by claimant.
10. Exhibit B contains no address or legal description of the property or approximation of the metes and bounds of the property.

## CONCLUSIONS OF LAW

1. Exhibit B does not specify with reasonable certainty the land to which it applies.
2. Exhibit B is in violation of the Statute of Frauds.
3. Exhibit B is an invalid testamentary disposition of the real estate.
4. The claim against the estate for $1,068.00 should be allowed.
5. The claim for a life estate in decedent's real estate should be disallowed.

Appellant's App. at 6-7. This appeal ensued.

---

[2] Derrick's claim against the Estate asserted a "claim for services" in the amount of $1248. But after the trial, the parties agreed that the amount owed was $1068.

4

**DISCUSSION AND DECISION**

At the Estate's request, the trial court made findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). Our standard of review is therefore two-tiered. We first determine whether the evidence supports the findings, and then we determine whether those findings support the judgment. Culley v. McFadden Lake Corp., 674 N.E.2d 208, 211 (Ind. Ct. App. 1996). The trial court's findings and judgment will not be set aside unless they are clearly erroneous. Id. Findings of fact are clearly erroneous when they are unsupported by facts of record or by reasonable inferences. DeHaan v. DeHaan, 572 N.E.2d 1315, 1320 (Ind. Ct. App. 1991), trans. denied. In determining whether the findings and judgment are clearly erroneous, we neither reweigh the evidence nor judge the credibility of witnesses, and we consider only the evidence and reasonable inferences that support the judgment. Id. And where, as here, a trial court has made special findings pursuant to a party's request under Trial Rule 52(A), we may affirm the judgment on any legal theory supported by the findings. Mitchell v. Mitchell, 695 N.E.2d 920, 923 (Ind. 1998).

Also, Derrick appeals from a negative judgment. When a party appeals from a negative judgment, he must demonstrate that the evidence points unerringly to a conclusion different from that reached by the trial court. Mominee v. King, 629 N.E.2d 1280, 1282 (Ind. Ct. App. 1994). We will reverse a negative judgment only if the decision of the trial court is contrary to law. Id. In determining whether a trial court's decision is contrary to law, we must determine if the undisputed evidence and all

reasonable inferences to be drawn therefrom lead to but one conclusion and the trial court has reached a different one.  Id.

Derrick contends that the probate court erred when it concluded that the agreement was an invalid testamentary transfer and violated the statute of frauds.  We must agree. First, the basic distinction between an inter vivos transfer and a testamentary transfer is the time at which the transferred interest passes.  See Russell v. Walz, 458 N.E.2d 1172, 1180 (Ind. Ct. App. 1984).  "'A will passes no interest until the death of the testator and up to that time it is fully revocable.'"  Id. (quoting T. Atkinson, Handbook of the Law of Wills 183 (2d ed. 1953)).  The pivotal question is the grantor's intent.  Id.  If the grantor did not intend to confer a present interest, the instrument is testamentary.  Id.

The plain language of the agreement indicates that Korn's intent was to transfer an interest in the real property to Derrick during her lifetime.  The agreement states that Derrick "shall have a life long lease" to include use of "all the outbuildings and land" and that he would be paid "starting 01/05/11" for maintenance.  Exhibit B at 1.  And one of the agreement's final provisions states that Korn would "as long as [she could] and with Matt's help spend some time on the farm until [her death]."  Id. at 3.  Thus, we hold that the agreement was not a testamentary transfer and, therefore, that two witnesses were not required.[3]

Next, under the statute of frauds,

> an enforceable contract for the sale of land must be evidenced
> by some writing:  (1) which has been signed by the party
> against whom the contract is to be enforced or his authorized

---

[3]  The probate court found that the agreement was an invalid testamentary transfer because it contained "some testamentary language" but was "not witnessed by two people."  See Appellant's App. at 6; Ind. Code § 29-1-5-3 (two witnesses required for a valid will).

agent; (2) which describes with reasonable certainty each party and the land; and, (3) which states with reasonable certainty the terms and conditions of the promises and by whom and to whom the promises were made.

Johnson v. Sprague, 614 N.E.2d 585, 588 (Ind. Ct. App. 1993) (emphasis added).  Regarding whether the land is described with reasonable certainty,

it is not essential that the description have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject matter.  The terms may be abstract and of a general nature, if with the assistance of external evidence the description, without being contradicted or added to, can be connected with and applied to the very property intended, to the exclusion of all other property.

Cripe v. Coates, 124 Ind. App. 246, 116 N.E.2d 642, 644-45 (1954).  Thus, "'[i]t is a familiar rule that it is not the office of a description to identify lands, but simply to furnish the means of identification.'"  Harlan Bakeries, Inc. v. Muncy, 835 N.E.2d 1018, 1031 (Ind. Ct. App. 2005) (quoting Criss v. Johnson, 169 Ind. App. 306, 348 N.E.2d 63, 66 (1976)).

Schuler v. Graf, 862 N.E.2d 708, 713 (Ind. Ct. App. 2007), trans. denied.

Here, the agreement refers to Korn's description of the property as "my property and the farm house on which it sets [sic].  All outbuildings and land or what is known as the original homestead, (all land north of the toll road.)"  Exhibit B at 1.  We hold that that description, while obviously incomplete, "furnished the means of identification and could be properly supplemented by parol evidence to identify the property."  See Blake v. Hosford, 387 N.E.2d 1335, 1340 (Ind. Ct. App. 1979).  Indeed, the record discloses no disagreement between the parties concerning the identity of the property at issue.  The agreement does not violate the statute of frauds.

But, again, Derrick appeals from a negative judgment, and he must demonstrate that the evidence points unerringly to a conclusion different from that reached by the

7

probate court. See Mominee, 629 N.E.2d at 1282. The probate court ultimately concluded that the Estate properly disallowed Derrick's claim for a life estate in the real property and the weekly payments for maintenance under the agreement. And the evidence presented and argument made by the Estate support that conclusion.

The agreement includes a provision stating that it "shall not be change[d] or canceled once Matt has started to work on the house." Exhibit B at 3. In other words, Derrick's work on the house was a condition precedent to an enforceable agreement, and either Korn or her attorney-in-fact could cancel the agreement unilaterally until he "started to work on the house." At the hearing on his claim, Derrick testified in relevant part that he had not been to Korn's house since March 8, 2011, the same day that the agreement was executed.[4] And there is no evidence that Derrick performed any work on the house pursuant to the agreement. Indeed, Mannen testified that "no structural changes" or improvements have been made to the house since Derrick cleaned up the house following the burglaries, which work was not done pursuant to the agreement. Transcript at 57. And the probate court found that the house "has not been restored or maintained." Appellant's App. at 7. Thus, the evidence shows that Derrick had not yet "started to work on the house" pursuant to the agreement. Exhibit B at 3. In early April 2011, prior to Korn's death, Wagner, Korn's attorney-in-fact, executed a document canceling the agreement. Because Derrick had not yet started to work on the house, the condition precedent was not satisfied, and the agreement remained subject to cancellation.

---

[4] Derrick testified that the last time he was there "was dated what the invoice is." Transcript at 41. The most recent invoice submitted by Derrick was dated March 8, 2011.

Further, the parties offered and admitted parol evidence without objection, which showed that a provision had been omitted from the typewritten version of the agreement. Derrick testified, and it was undisputed, that the parties intended for the handwritten version to be typed but that he had omitted the "lifetime agreement unless one chooses to change" provision from the typewritten version. Transcript at 36; Exhibit 8. This provision shows that the parties expressly reserved the right to amend the agreement, and, as discussed above, that right would only be cut off if Derrick had started work on the house. When this right-to-amend provision is read together with the unsatisfied condition precedent discussed above, it is clear that Korn's attorney-in-fact had the contract right to cancel the agreement and that the probate court did not err when it concluded that the Estate properly disallowed Derrick's claim.

Finally, we observe that agreements,

in which aged and infirm persons convey their property to others in consideration of an agreement for support, maintenance, and care, are almost universally recognized by the courts as constituting a class by themselves in matters pertaining to their construction and interpretation, and, as has been reiterated in several decisions, until such contract is fully performed on both sides it is liable to be rescinded and the property reclaimed, leaving the parties to their remedies respectively for what may have been furnished under the contract.

Tibbetts v. Krall, 128 Ind. App. 215, 145 N.E.2d 577, 581 (1957). Here, again, the probate court found that the farm house "has not been restored or maintained." Appellant's App. at 7. Because Derrick did not perform as required under the terms of the agreement, Wagner, Korn's attorney-in-fact, had the right to cancel the agreement,

which he did.  The probate court's denial of Derrick's claim against the estate under the agreement is not contrary to law.[5]

Affirmed.

KIRSCH, J., and MAY, J., concur.

---

[5] Neither party appeals the probate court's award of $1068 for work Derrick did to the house outside of the agreement.  Accordingly, that award stands.